UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WESTHEIMER REGENCY I, L.P. | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No.: 5:18-cv-00014-OLG |
| | § | |
| GREAT LAKES REINSURANCE (UK) SE, CERTAIN UNDERWRITERS AT LLOYDS LONDON, ALTERRA AMERICA INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, INDIAN HARBOR INSURANCE COMPANY, STARR SURPLUS LINES INSURANCE COMPANY, COMMERCIAL INDUSTRRIAL BUILDING OWNERS ALLIANCE, INC., IRONSHORE SPECIALTY INSURANCE COMPANY, HOMELAND INSURANCE COMPANY OF NEW YORK, CLAIMS ADJUSTING GROUP, INC., JOHN EUGENE BRINKLEY, and ATAIN SPECIALITY INSURANCE COMPANY | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

  COMES NOW, Westheimer Regency I, LP, (hereinafter referred to as "Plaintiff"), and files this First Amended Complaint and Jury Demand against Defendants, Great Lakes Reinsurance (U.K.) SE ("Great Lakes"), Alterra America Insurance Company ("Alterra"), Aspen Specialty Insurance Company ("Aspen Specialty"), Indian Harbor Insurance Company ("Indian Harbor"), Starr Surplus Lines Insurance Company ("Starr Insurance"), Homeland Insurance Company of New York ("Homeland Insurance"), Ironshore Specialty Insurance Company ("Ironshore Specialty"), Certain Underwriters at Lloyds, London ("Underwriters"), Atain

1

Specialty Insurance Company ("Atain"), Commercial Industrial Building Owners Alliance, Inc. (CIBA) (together, the "Carriers"), Claims Adjusting Group, Inc. (CAG), and John Eugene Brinkley ("Brinkley") (collectively, all defendants referred to as "Defendants"), and respectfully would show this court as follows:

## PARTIES

1. Plaintiff, Westheimer Regency I, LP, is a Domestic Corporation and owns the property that is the subject of this lawsuit, which is located in Bexar County, Texas.

2. Great Lakes, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Great Lakes regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Great Lakes has appeared and answered through counsel in this case.

3. Upon information and belief, Defendant, Alterra, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Alterra regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. According to the Policy, it may be served with by certified mail, return receipt requested, by serving: Thomas M. Dawson, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714.

4. Upon information and belief, Defendant, Aspen Specialty, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Aspen Specialty regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Aspen Specialty has appeared and answered through counsel in this case.

5. Upon information and belief, Defendant, Indian Harbor, is a foreign insurance company

engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Indian Harbor regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Indian Harbor has appeared and answered through counsel in this case.

6.     Upon information and belief, Defendant, Starr Insurance, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Starr Insurance regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. According to the Policy, it may be served with by certified mail, return receipt requested, by serving:  Thomas M. Dawson, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714.

7.     Upon information and belief, Defendant, Homeland Insurance, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Homeland Insurance regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. According to the Policy, it may be served with by certified mail, return receipt requested, by serving:  Thomas M. Dawson, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714.

8.     Upon information and belief, Defendant, Ironshore Specialty, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Ironshore Specialty regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. According to the Policy, it may be served with by certified mail, return receipt requested, by serving:  Thomas M. Dawson, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714.

9. Upon information and belief, Defendant, Underwriters, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Underwriters regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Certain Underwriters at Lloyd's of London (BRIT Syndicate 2987) ("Brit") and Certain Underwriters at Lloyd's of London (QBE UK Syndicate 1886) ("QBE") have appeared and answered through counsel in this case.

10. Upon information and belief, Defendant, Atain, is a foreign insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Atain regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Atain has appeared and answered through counsel in this case.

11. Defendant, CIBA, is a foreign purchasing group insurance company engaging in the business of insurance in Texas. CIBA regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas and does not maintain an agent for service on file in this State. CIBA has appeared and answered through counsel in this case.

12. Defendant, CAG, is a claims administrator company engaging in business in the state of Texas. CAG has appeared and answered through counsel in this case.

13. Defendant, Brinkley, is an individual residing in and domiciled in the State of Colorado. Brinkley has appeared and answered through counsel in this case.

**VENUE AND JURISDICTION**

14. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

15. Venue is proper in Bexar County, Texas, because this action concerns real property located in Bexar County, Texas, and all or a substantial part of the events giving rise to this claim occurred in Bexar County, Texas. 28 U.S.C. § 1391(b)(2).

## FACTS

16. Plaintiff is the owner of a property insurance policy ("the Policy") issued by The Carriers.

17. Plaintiff owns the insured property located at 8725 Marbach Road, San Antonio, Texas 78227, in Bexar County (hereinafter referred to as "the Property"). The Carriers sold the Policy insuring the Property to Plaintiff.

18. On or about April 13, 2016, a hail storm and/or windstorm struck Bexar County, Texas, causing severe damage to homes and businesses throughout the region ("the Storm") including the Property. The Storm damaged the Property including extensive damage to Plaintiff's roof, interior, HVAC systems, and siding.

19. Plaintiff subsequently submitted a claim to The Carriers for the damage the Property sustained as a result of the Storm. Plaintiff requested that The Carriers cover the cost of repairs, including but not limited to, replacement of the roof, interior, HVAC systems, siding, and loss of income.

20. The damage to the roof was so severe that Plaintiff's tenant, Body Alive, terminated its lease with Plaintiff as a result of wind and hail damage and resulting leaks. Body Alive signed a five year lease with Plaintiff approximately two weeks prior to the storm.

21. Defendants the Carriers assigned Kerry Owens[1] and Brinkley as the individual adjusters

---

[1] Owens and his company, Disaster America, were previously named as defendants but were dismissed after the case was removed, but less than 30 days after removal. For avoidance of doubt, this Amended Complaint does not name Owens or Disaster America as defendants, thereby effectuating the state Court's order of dismissal on the party's stipulation.

("the adjusters") on the claim. The adjusters were improperly trained and failed to perform a thorough investigation of the claim spending an inadequate amount of time inspecting Plaintiff's property. The adjusters conducted a substandard inspection of Plaintiff's Property evidenced by the adjusters' report, which failed to include all of Plaintiff's storm damages noted upon inspection. The damages the adjusters included in the report were grossly undervalued and did not allow for adequate funds to cover the cost of repairs to all the damages sustained.

22.     Owens and Brinkley refused to acknowledge the extensive damage to the roof, interior, siding, and HVAC units. Owens and Brinkley, misrepresented that the HVAC units and roof contained minimal damage and did not require full replacement. The only explanation of damages Brinkley and Owens provided Plaintiff was a low-ball estimate prepared by Owens that contained no photos of the property damage.

23.     Interestingly, Owens is a preferred vendor for Claims Adjusting Group, CIBA, and Great Lakes Reinsurance. As a preferred vendor, Owens is referred contracting business from CIBA and Great Lakes. In fact, Brinkley referred Owens to Plaintiff to perform the minimal repairs that Owens and Brinkley adjusted on behalf of CIBA and Great Lakes. In an attempt to minimize the policy payments, Brinkley conspired with Owens and emailed Plaintiff suggesting that Plaintiff should use Owens as its contractor to perform the insurance approved repairs. Owens is incentivized to send a low-ball adjusting estimate in return for continued referrals by CIBA and Great Lakes. The conflict of interest created by the Defendants resulted in an improper adjustment and underpayment of Plaintiff's insurance claim.

24.     Great Lakes, CIBA, and its personnel failed to thoroughly review and properly supervise the work of their assigned adjusters which ultimately led to the approving an improper adjustment

and an inadequately unfair settlement of Plaintiff's claim. As a result of Defendants' wrongful acts and omissions set forth above and further described herein, Plaintiff was wrongfully denied on the claim and has suffered damages.

25. Together, Defendants set out to deny and/or underpay on properly covered damages. Defendants failed to provide full coverage for the damages sustained by Plaintiff and under-scoped Plaintiff's damages, thereby denying adequate and sufficient payment on Plaintiff's claim. As a result of Defendants' unreasonable investigation, Plaintiff's claim was improperly adjusted, and Plaintiff was wrongfully denied on the claim and has suffered damages. The mishandling of Plaintiff's claim has also caused a delay in Plaintiff's ability to fully repair the Property, which has resulted in additional damages. To this date, Plaintiff has yet to receive the full payment that it is entitled to under the Policy.

26. As detailed in the paragraphs below, The Carriers wrongfully underpaid and partially denied Plaintiff's claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff.

27. To date, The Carriers continue to delay in the payment for the damages to the Property. As such, Plaintiff has not been paid in full for the damages to the Property.

28. Defendants the Carriers failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, they refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Plaintiff has not been fully compensated for the covered damages to the roof, HVAC units, siding, interior, and loss of income. The Carriers' conduct

7

constitutes a breach of the insurance contract between Great Lakes, CIBA and Plaintiff.

29. Defendants misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Specifically, defendants paid to repair small portions of the roof when the roof requires full replacement. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(1).

30. Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.0060(a)(2)(A).

31. Defendants failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's claim. Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(3).

32. Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(4).

33. Defendants refused to fully compensate Plaintiff, under the terms of the Policy, even

though Defendants failed to conduct a reasonable investigation. Specifically, Defendants performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's claim on the Property. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(7).

34. Defendants the Carriers failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. The Carriers' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.055.

35. Defendants the Carriers failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. The Carriers' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.056.

36. Defendants the Carriers failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not received full payment for the claim. The Carriers' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.058.

37. From and after the time Plaintiff's claim was presented to Defendants the Carriers, the liability of The Carriers to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, The Carriers have refused to pay Plaintiff in full, despite there being

no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. The Carriers' conduct constitutes a breach of the common law duty of good faith and fair dealing.

38. Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

39. As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who are representing them with respect to these causes of action.

40. Plaintiff's experience is not an isolated case. The acts and omissions The Carriers committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of The Carriers with regard to handling these types of claims. The Carriers' entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## CAUSES OF ACTION

### I. Cause of Action Against Brinkley and CAG
### Noncompliance with Texas Insurance Code: Unfair Settlement Practices

41. Each of the foregoing paragraphs is incorporated by reference herein.

42. The Carriers assigned Brinkley and CAG to adjust this claim. Brinkley was improperly trained and performed an outcome oriented and unreasonable investigation of Plaintiff's damages. Brinkley did not properly assess all damages caused by the Storm and omitted covered damages from the report including the full extent of damage to the roof. Brinkley refused to fully compensate Plaintiff for the full amount Plaintiff is entitled under the Policy. The outcome oriented investigation of Plaintiff's claim resulted in a biased evaluation of Plaintiff's damages to

the Property and the estimated damages were severely underestimated.

43. Defendants Brinkley and CAG's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

44. Defendants, Brinkley and CAG are individually liable for their unfair and deceptive acts, irrespective of the fact Brinkley was acting on behalf of The Carriers, because Brinkley is individually a "person" as defined by TEX. INS. CODE § 541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor." TEX. INS. CODE § 541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

45. Defendants' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages; (2) stating that Plaintiff's damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damages as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiff received. Defendant Brinkley's unfair settlement practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of

11

insurance. TEX. INS. CODE § 541.060 (a)(1).

46. Defendants Brinkley and CAG's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

47. Defendants Brinkley and CAG failed to explain to Plaintiff the reasons for the offer or offers of an inadequate settlement. Specifically, Defendant Brinkley failed to offer Plaintiff adequate compensation without any explanation as to why full payment was not being made. Furthermore, Defendant Brinkley and CAG did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor was there any explanation for the failure as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

48. Defendants Brinkley and CAG's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

49. Defendants Brinkley and CAG did not properly inspect the Property and failed to account for and/or undervalued Plaintiff's roof damage, although reported by Plaintiff to The Carriers.

Defendants Brinkley and CAG's unfair settlement practices, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition, and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

## II.   Causes of Action Against the Carriers

50.   The Carriers intentionally breached their contract with Plaintiff, intentionally violated the Texas Insurance Code and intentionally breached the common law duty of good faith and fair dealing.

### A.   Breach of Contract

51.   The Carriers breached the contract of insurance they had with Plaintiff. The Carriers breached the contract by its failure/and or refusal to adequately pay the claim as it is obligated to do under the terms of the Policy in question and under the laws in the State of Texas.

### B.   Noncompliance with Texas Insurance Code:  Unfair Settlement Practices

52.   Defendants the Carriers' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this article were made actionable by TEX. INS. CODE § 541.151.

53.   Defendants the Carriers' unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 5410.060(a)(1).

54.   Defendants the Carriers' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though

The Carriers' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

55. Defendants the Carriers' unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

56. Defendants the Carriers' unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of compensation and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

57. Defendants the Carriers' unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

      **C.    Noncompliance with Texas Insurance Code: Prompt Payment of Claims Statute**

58. Plaintiff is entitled to 18% interest and attorney fees under TEX. INS. CODE §542.060 for violating the Texas Insurance Code, Prompt Payment of claims TEX. INS. CODE §542.051 *et. seq.*

59. The Carriers failed to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints under TEX. INS. CODE §542.055.

60. The Carriers failed to notify Plaintiff in writing of its acceptance or rejection of the claim within applicable time constraints under TEX. INS. CODE §542.056.

61. The Carriers delayed the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for under TEX. INS. CODE §542.058.

### D.   Breach of the Duty of Good Faith and Fair Dealing

62. The Carriers breached the duty of good faith and fair dealing by failing to adequately and reasonably investigate and evaluate Plaintiff's claim while it knew or should have known, by the exercise of reasonable diligence, that its liability was reasonably clear.

### E.   Knowledge

63. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code.

### DAMAGES

64. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

65. The damages caused by the hail storm and/or windstorm have not been properly addressed or repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiff.  These damages are a direct result of Defendants' mishandling of Plaintiff's claim in violation of the laws set forth above.  Plaintiff has lost income covered by the Policy.

66. For breach of contract, Plaintiff is entitled to regain the benefit of their bargain, which is the amount of his claim, together with attorney's fees.

67. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff ask for three times their actual damages. TEX. INS. CODE § 541.152.

68. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claim, as well as 18% (eighteen percent) interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE § 542.060.

69. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional stress.

70. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury and tenders the appropriate fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this court site Defendants to appear and answer herein and that Plaintiff has judgment taken against Defendants and recovers from Defendants all damages allowed by law, and that Plaintiff be awarded attorneys' fees for trial

and any appeal of this case, for pre-judgment and post judgment interest as allowed by law, costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

*/s/Jeffrey L. Raizner*
**RAIZNER SLANIA LLP**
JEFFREY L. RAIZNER
State Bar No. 00784806
ANDREW P. SLANIA
State Bar No. 24056338
AMY B. HARGIS
State Bar No. 24078630
BEN WICKERT
State Bar No. 24066290
efile@rainzerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax:   713.554-9098
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to counsel of record on this the 1st day of June 2018, via ECF.

*/s/Jeffrey L. Raizner*
**Jeffrey L. Raizner**